THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MORRIS S. TREMAINE, as Comptroller of the State of New York, Appellant.

Argued June 19, 1939; decided June 21, 1939.

*Arthur A. Ballantine, Cloyd Laporte, Charles C. MacLean, Jr., Rupert Warren, Richard E. Manning* and *Lyman M. Tondel, Jr.,* for appellant.

*John J. Bennett, Jr., Attorney-General* (*Henry Epstein, Wendell P. Brown* and *John C. Crary, Jr.,* of counsel), for respondent.

*John T. DeGraff* for Association of State Civil Service Employees of the State of New York, *amicus curiæ.*

*Herman E. Cooper* and *William Sardell* for State, County & Municipal Workers of America, *amicus curiæ.*

CRANE, Ch. J.   Article VII of the present Constitution, if we take it as it reads, provides a clear and distinct plan for appropriation bills whereby money is to be raised to run the State.  The first thing, of course, is to find out how much is needed, and section 1 directs the heads of each department in the State government, except the Legislature and the Judiciary, to furnish the Governor this information, which shall also be furnished to the committees of the Legislature.  Hearings shall be had upon these proposed estimates, at which members of the legislative committees shall be entitled to attend.  In other words, before the Governor's budget is made up the whole matter is gone over by the Governor, the heads of the departments, and the appropriate members of the Legislature.  The knowledge, thus acquired for the Legislature, antedates the Governor's budget.  The Legislature and the Judiciary are to furnish itemized estimates of the amounts required, which shall be put in the budget without revision.  In other words, that part of the budget which relates to the Judiciary and the Legislature must be itemized

The next step is the Governor's budget, which shall contain a complete plan of the expenditures proposed to be made, containing full information. The words " clearly itemized " are not used as in article IV-A, section 2, of the former Constitution, but the meaning appears to be the same, as there must be an explanation of the basis for all the estimates and recommendations and all information deemed proper. The Governor's budget is to be itemized so as to show of what the estimates consist. The information necessarily consists of items. The Constitution means that the budget, and the appropriation bills accompanying it, shall be broken down into items sufficient to show what money is to be expended, and for what purpose. It is information the Governor must give, and it is the items giving this information which is embodied in his appropriation bills.

The Constitution (Art. VII) reads:

" § 3. At the time of submitting the budget to the legislature the governor shall submit a bill or bills containing all the proposed appropriations and reappropriations included in the budget and the proposed legislation, if any, recommended therein."

" § 4. The legislature may not alter an appropriation bill submitted by the governor except to strike out or reduce *items* therein, but it may add thereto *items* of appropriation provided that such additions are stated separately and distinctly from the *original items of the bill* and refer each to a single object or purpose. None of the restrictions of this section, however, shall apply to appropriations for the legislature or judiciary."

When, therefore, we are told that the Legislature may not alter an appropriation bill submitted by the Governor, except to strike out or reduce items therein, we expect the appropriation bill to contain items. As stated before, the items must be sufficient to furnish the information necessary to determine whether in the judgment of the Legislature all that is demanded should be granted or is required.

The Governor in this case, according to the agreed statement and the exhibits, on January 30, 1939, submitted to

the Legislature a budget duly itemized. At the same time the Governor, pursuant to section 3 of article VII, submitted four bills containing all his proposed appropriations itemized.

It is the bill containing the general appropriations for the support of the government which is the subject of this litigation. The bill under discussion contained in Part 1 thereof appropriations for the departments of the State government. In each instance, as required by section 36 of the State Finance Law (Cons. Laws, ch. 56), the appropriations for the department, division or bureau were divided into two main items, namely, expenses for personal service and expenses for maintenance and operation. The appropriations for personal service were by an accompanying schedule itemized so that amounts should be available for each of the various positions or groups of positions in the department, division or bureau. These items are commonly referred to as " line items." Likewise in each instance of an appropriation for maintenance and operation, there is an itemized statement accompanying the schedule showing the amounts which were to be available for the various expenses. This was in accordance with the Constitution, as we read it, unless we consider a lump sum appropriation for a department an item. Under section 4 of the Constitution, above quoted, the Legislature could strike out or reduce any of these items, or could strike them all out, which it did in some instances.

The Governor's appropriation bills were referred to the Ways and Means Committee of the Assembly, and on April 25, 1939, that committee amended and reported to the Assembly, as so amended, the general appropriation bill for the support of the government. It struck out substantially every item contained in Part 1 of the bill, as submitted by the Governor, and substituted therefor a single item of appropriation to each of the various departments, or divisions of departments, combining expenses of maintenance and operation, personal service, travel outside the State, and the purchase or exchange of automobiles.

In some cases it substituted such a single item of appropriation plus certain items of appropriation for special functional activities of the department, division or bureau — in other words, it made what is commonly known as " lump sum appropriations."

*People* v. *Tremaine* (252 N. Y. 27) is not an authority justifying lump sum appropriations. True, in that case there were lump sum appropriations the same as there are in this case. The point, however, in the *Tremaine* case was the power of segregation, and this was the sole question decided, although there were strong intimations throughout the opinions that the whole spirit of the Constitution was against lump sum appropriations and in favor of appropriations showing the items of expenditure. I said: " * * *, in fact, the spirit and apparent intention of the budget amendment to the Constitution is that there shall be itemized appropriations. The best thing to do is to put the purpose in the appropriation and limit the expenditure to the amount of the appropriation for each item. The Governor and Legislature have apparently done this for the major part of the budget bill. But it is also conceded that there are times when item appropriations would be almost impossible or impracticable, as in the case of the reorganization of an office, and lump sum appropriations are made " (p. 53).

Of course in these matters, as in every other case of the interpretation of a Constitution or of a law, the evils result from the extreme exercise of a power and not in the general principle — from a system pushed too far.

The present Constitution emphasizes the necessity of items, not lump sums, for an entire department or bureau. On the other hand, there are cases in which it would be impracticable, if not impossible, to itemize the sum required. Departments with uncertain contingent expenses or seasonal occupations, building or road construction may require lump sum appropriations. We expect in all these matters that the spirit of the Constitution shall be observed and that good sense in its application will govern. In the *Tremaine*

case the lump sum appropriations were recognized as it was impossible to tell beforehand exactly what might be needed in reorganization of the government. In fact the question was not directly in issue or the point raised. However, in the departments containing personal staffs of clerks and assistants, and which have been functioning for years, there is every reason for items the same as there is in making up the Judiciary budget for the Legislature. In this Governor's appropriation bill there are many places where the lump sum appropriation is necessary. These are readily recognized and will afford no disagreement between the Executive and the Legislature. Where, however, a whole appropriation has been stricken out, including the items of which it is made, and compensation for clerks and services as well as maintenance is lumped together, the words of the Constitution have not been followed and such appropriation is illegal.

The crux of this controversy turns upon the meaning of the word "items." It is claimed by the appellant that the Legislature by its reserve power may make lump sum appropriations in any case, guided simply and solely by the information furnished in the Governor's budget or otherwise. The Governor's budget, containing the information necessary for the running of the various departments of government, is more than a mere source of information. If this were not so, it would be unnecessary for the Governor to submit any appropriation bills. These appropriation bills originate with the Governor — not with the Legislature, and the control of the Legislature lies in the manner in which it may deal with these bills.

*Itemized* estimates of the financial needs of the Legislature and of the Judiciary, certified by the Comptroller, shall be transmitted to the Governor for inclusion in the budget without revision; in other words, the budget for the Judiciary is itemized; so is that for the Legislature (Art. VII, § 1). In our Judiciary budget, which was thus submitted, every place and position are stated with the salary connected therewith. There are small lump sum appropriations which

are rendered necessary because of the uncertainty of events. To itemize means to give items. Does the word " item " or " items " in section 1 have a different meaning than the word " item " in section 4? Does the meaning of the same word change in the same article? Thus in *section 2 of article IV-A* of the constitutional amendment of 1928 (adopted November 8, 1927), we find that the Governor's budget shall contain all the estimates revised or certified and clearly *itemized*. In article VII of the Constitution of 1938, these words are changed so that the budget shall contain a complete plan of expenditures proposed " together with an explanation of the basis of such estimates and recommendations as to proposed legislation, if any." (§ 2.) The appropriation bills which the Governor shall submit shall contain all the proposed appropriations included in the budget. Aside from the provisions relating to the financial requirements of the Legislature and the Judiciary the word " item " or " itemized " is not used in connection with either the budget or the appropriation bills in the present article VII of this Constitution of 1938. In this respect there is a change in phraseology, but neither in the statement issued by the Convention for the guidance of voters, nor in the brief of the appellant is there any claim that the meaning or purpose of article IV-A, section 2, of the former constitutional amendment has been changed. And this is necessarily so. Can the word " itemized," as used in this amendment of 1928, have a different meaning than the use of the word " items " in section 4 of article VII of the present Constitution? For instance, in the appropriation bill for the Banking Department, items were stricken out and the substitution made as follows: " For general expenses of maintenance and operation, including personal service and travel outside of State at not to exceed $3,000... $965,000." Read this appropriation in conjunction with section 4. " The legislature may not alter an appropriation bill submitted by the governor except to strike out or reduce items therein." The reference here is not to the items in the *budget* but to the items in the Governor's appropriation bill.

Is this substitution to be considered the striking out or reducing of an item? When it refers to striking out an item, we cannot conceive it as meaning striking out the entire appropriation for a department — all the items, and putting in a lump sum. The section must have reference to the items which go to make up the sum total of the appropriation for the department. The Governor is obliged to furnish the items or information making up the appropriation, and cannot submit it as a lump sum. The appropriation for a department must be in such form that the Legislature may be able to strike out or reduce any of its items. When the word " item " or " items " is used in connection with the budget, as it was in 1928, or as used in 1938 for the estimates of the Legislature and the Judiciary, and in section 4 in reference to the ability and power of the Legislature to strike out or reduce " items," the meaning of the words is the same. The appropriations so far as practicable or possible are to be itemized as submitted, and the limitation on the Legislature is to reduce or strike out the items. To strike them all out and substitute lump sums is to revert to the old system which years of agitation and endeavor have sought to abolish.

Again, in this connection, in laying down this broad principle for the interpretation of this Constitution, we must remember what I have heretofore said, that details must not run into absurdities, and only those details need be given which are necessary or appropriate to show where and for what the money is to be spent. For instance, it is not necessary to state the salaries of all clerks or of all stenographers, but it may be appropriate to state the number that is required to do such class of work and the lump sum that is to be appropriated for the purpose.

We cannot deal with every provision of these budget bills and of the action of the Legislature thereon. We do, however, state that the Legislature cannot strike out the itemized appropriations in the Governor's appropriation bills and substitute therefor lump sums for the same personal services and maintenance. The Legislature has complete power over

appropriations. It does not have to make them, but when it does attempt to do so, it is obliged to follow the provisions of the Constitution. The control of the purse strings is not unlimited control; it is subject to veto in some instances and to method of action in all.

Again, the Legislature may not alter an appropriation bill by striking out the Governor's items and replacing them for the same purpose in different form. Thus reads the fundamental law binding on us all, Judiciary, Governor, Legislature. It may, however, *add* items of appropriation, provided such additions are stated separately and distinctly from the *original* items of the bill and refer each to a single object or purpose. The items thus proposed by the Legislature are to be *additions*, not merely substitutions. These words have been carefully chosen. The added items must be for something other than the items stricken out. This article VII was prepared after years of experience and after many appropriation bills in the last ten years had been submitted in various forms — some in compliance with the constitutional provision and others departing therefrom. The application of the constitutional provisions has not been uniform, acquiescence no doubt on the part of all accounting for the failure to question the action. However, the matter having been brought into the courts, we are forced to give this explanation in hopes that it may somewhat clarify and assist future legislation. It is easier to state a rule than to apply it. Many conditions arise which create doubts. The utmost we can do is to state the fundamental principles in hopes that the parties acting under them will give a practical and useful application. As said before, it is the extreme which causes disputes or danger. Items should not be carried out in full detail; it is sufficient when they give information as to the necessities for or purposes of the expenditures. During the course of the year these may prove inadequate or excessive, but no system works perfectly.

Again, the lump sum appropriation may be carried to the extreme so that the theory of the Constitution is

evaded. Here, too, the way is clear. In between the two extremes we must rely upon the Executive and Legislative branch of the government to provide a budget sufficiently itemized to comply with the spirit and words of the Constitution, and yet containing lump sum appropriations when experience in the line of work or in the department shows that details and items in a budget would be impracticable or almost impossible — unworkable.

The full and complete brief of the appellant is very interesting and contains much matter bearing upon the wisdom of the constitutional limitations in the amendment of 1928 and present Constitution, stating the manner in which the Legislature may exercise its plenary power over appropriations. Writers upon the subject, as quoted, take the view that experience has inclined them to believe that an appropriation bill should contain a few lump sums, leaving to administrative officers to make proper segregation or expenditures. The parliamentary system of England is given as an instance. We are not a parliamentary government where the Executive branch is also part of the Legislature. The conflict of views upon this subject; in fact upon all forms of government expenditures and taxation, has waged for years and will continue, I dare say, for a long time to come. Much has been and may be said on all sides. These are, however, not for our consideration. We start with a Constitution which it is our province to interpret as it is written, and not as we think it might have been written. Thus it is, why we confine this opinion to the words used, giving to them not only their ordinary meaning but that which previous acts, measures and reports intended them to have.

All agree that the " general provisions " are unconstitutional and have no place in the budget.

The Appellate Division has by inadvertence included in its judgment certain provisions about which there is no controversy, i. e., the appropriation for State highways, Part III, page 909, with the exception of the part conceded to be illegal, and the provision for common schools, Part VI,

page 1003. Those provisions are constitutional and the judgment of the Appellate Division as to those should be modified, and as so modified affirmed, without costs.

The judgment should be modified in accordance with this opinion and as so modified affirmed, without costs.

LEHMAN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; O'BRIEN, J., taking no part.

Judgment accordingly.